IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DYLYN REED RICHARDS, #1886141,** § | |
| Petitioner, § | |
| § | |
| v. § | CIVIL CASE NO. 3:16-CV-2785-M-BK |
| § | |
| **LORIE DAVIS, Director,** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Div.,** § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, the petition should be **DENIED**.

**I. BACKGROUND**

In 2013, a jury convicted Petitioner of intoxication manslaughter causing death of a peace officer and sentenced him to 55 years in prison. *State v. Richards*, No. 37254CR (40th Dist. Court, Ellis Cty., Tex., Aug. 30, 2013), *aff'd*, No. 10-13-00412-CR, 2015 WL 1905946 (Tex. App.--Waco Apr. 9, 2015, no pet.). The Court of Criminal Appeals (TCCA) subsequently denied habeas relief. *Ex parte Richards*, No. WR-85,621-01 (Tex. Crim. App. Sept. 14, 2016) (denying relief without written order on findings of trial court without a hearing); Doc. 13-6 at 1.

On September 30, 2016, Petitioner filed his *pro se* federal habeas petition, claiming ineffective assistance of counsel and prosecutorial misconduct. Doc. 3. Respondent argues the claims lack merit. Doc. 14. Petitioner files a motion for discovery and a reply. Doc. 19; Doc. 25.

## II. SUMMARY OF EVIDENCE

The state habeas judge (who also presided over the trial proceedings) recommended that habeas relief be summarily denied, finding as follows:

> the Court finds that all matters necessary to decide the application are contained within the records of this Court, the Respondent's recitation of facts is supported by the records of this Court, and the application does not contain sworn allegations of fact which if true would render applicant's confinement illegal. The Court further finds there is no necessity to conduct an evidentiary hearing in that the application does not contain any unresolved facts material to applicant's confinement.

Doc. 13-8 at 90. The TCCA denied relief based on the above findings. Doc. 13-6 at 1.

After independently verifying its accuracy, the Court takes, verbatim, the following summary of the trial evidence from the State's appellate brief as incorporated in the State's answer to the habeas application:

> Around midnight on Friday, July 27, 2012, into Saturday morning, July 28, 2012, Officer Joshua Williams of the Waxahachie Police Department was responding to a dispatch of a disturbance at the Taco Bell. (IV R.R. at 21, 22, 24-25, 46, 49). As Williams was making a left turn into the parking lot, his vehicle was struck by a 1994 Chevy Suburban, resulting in his death. (IV R.R. at 50, 55, 92-93; VI R.R. at 51).
>
> The Suburban had been traveling at about 69 miles per hour at the time of the crash, and the speed limit was 45 miles per hour. (IV R.R. at 35, 169, 191, 215; VI R.R. at 30-33; St. Ex. 14, 49). The headlights in the Suburban were off. (IV R.R. at 61, 144-58; V R.R. at 214; VI R.R. at 19, 87-88; St. Ex. 4, 91, 92, 94).
>
> The driver, and only occupant, of the Suburban was Dylyn Reed Richards. (IV R.R. at 79, 186). At the scene, Richards emitted a strong odor of alcoholic beverage and was belligerent to emergency personnel. (IV R.R. at 113-18, 193). He admitted that he had been drinking "a lot." (VI R.R. at 141). A witness testified that Richards had been at the Twisted Frog in downtown Waxahachie just before the collision, where Richards had consumed at least five drinks. (VI R.R. at 194-211). A driver who encountered the Suburban between the bar and the collision site recounted that the headlights of the Suburban were off, that she had flashed her lights to let the driver know the headlights were off, and that she had to take evasive action to avoid a head-on collision when the Suburban entered her lane. (VI R.R. at 88-90).

> Blood alcohol tests, one taken by the hospital for medical purposes and another at the request of law enforcement, showed Richards' blood alcohol content to be in excess of .20 grams of alcohol per 100 milliliters of blood. (V R.R. at 18-37, 55, 171-72).
>
> An accident reconstructionist testified that the speed of the Suburban, the headlights being off, and the intoxication of the driver were significant contributing factors to the collision that caused the death of Officer Williams. (VI R.R. at 77).

Doc. 12-19 at 6-7; Doc. 13-8 at 79-80.

### III. ANALYSIS

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the decision of the state court is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (*quoting Richter*, 562 U.S. at 102)). Consequently, as long as "'fairminded jurists could

disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law" (quotations and quoted case omitted; emphasis in original)).

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### A. Ineffective Assistance of Counsel on Appeal – Claim 1

Petitioner asserts his appellate counsel rendered ineffective assistance in failing to challenge on appeal the trial court's denial of the defense motions to suppress the results of the blood alcohol test. Doc. 3 at 6. He relies on *Missouri v. McNeely*, 569 U.S. 141 (2013), which was decided after his arrest and blood alcohol test, but before his trial. *McNeely* held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." 569 U.S. at 165. Petitioner asserts that under *McNeely*, the blood test was illegally taken without a warrant or exigent circumstances. Doc. 25 at 4-8.

**Suppression Hearing**

Before trial, a hearing was held on the defense's motions to suppress the blood test and blood-test results under *McNeely*. Defendant contended that *McNeely* had, in essence, found that the Texas mandatory blood test statute, TEX. TRANSP. CODE § 724.012, was unconstitutional. Doc. 12-1 at 66-71 (Def.'s Mot. to Suppress). The State presented rebuttal argument that section 724.012 was not unconstitutional under *McNeely* and, in the alternative, sought to establish the presence of exigent circumstances through the testimony of Otis White and Bruce Sherman, troopers with the Texas Department of Public Safety (DPS), and Corey Manges, a trauma nurse at Parkland Hospital in Dallas. Doc. 12-8 at 92-93.[1]

---

[1] Following *McNeely*, the Texas Court of Criminal Appeals did not find TEX. TRANSP. CODE § 724.012 unconstitutional. However, it held that absent a search warrant, a search under section

Trooper White testified that after a preliminary investigation of the accident scene, he opened the door of the ambulance where Petitioner was being treated and detected the odor of alcohol emanating from Petitioner's body. Doc. 12-8 at 19. The same odor was present in Petitioner's car, where White saw a can of beer, a marijuana pipe, a plastic wrapper with marijuana residue, and pill bottles that contained what appeared to be medications. *Id.* at 20. White also learned that Petitioner had been "verbally belligerent" toward the Waxahachie police officers at the accident scene. *Id.* at 22. However, White could not complete the intoxication investigation because Petitioner was flown to Parkland Hospital. *Id.* at 23. Thus, he contacted the DPS Dallas center, which put him in touch with trooper Sherman, who eventually completed the investigation. *Id.* at 23-24. White conveyed all details to Sherman, and later called Sherman back to inform him of Officer Williams's death. *Id.* at 24.

Trooper Sherman testified that when he arrived at Parkland Hospital, Petitioner was "cursing, screaming and the medical staff was having to restrain him to the table just basically because [of] his aggressive nature." Doc. 12-8 at 39-40. Sherman "observed a strong odor of alcoholic beverage in the room as well as when [Petitioner] spoke." *Id.* Petitioner's "eyes were bloodshot and glassy," his "speech was slurred and at the corners of his mouth he had a thick white saliva buildup." *Id.* At the request of a nurse, Sherman informed Petitioner that he was in the hospital because he had been involved in an automobile accident, which had caused the death of a police officer. *Id.* at 41. Although Petitioner denied being involved in the accident or taking

---

724.012 is unreasonable unless it falls within an established exception to the Fourth Amendment warrant requirement. *See State v. Villareal*, 475 S.W.3d 784, 815 (Tex. Crim. App. 2014) (decided while Petitioner's direct appeal was pending); *see also Weems v. State*, 493 S.W.3d 574, 578 (Tex. Crim. App. 2016).

any medications, Sherman stated that, based on his training and experience, he believed the white buildup on the corners of Petitioner's mouth was consistent with an excessive use of a prescription medicine.  *Id.* at 42, 45-46.  According to Sherman, Petitioner fell asleep as Sherman asked him how much he had to drink.  *Id.*

Concluding that Petitioner appeared intoxicated, Sherman placed him under arrest and enlisted the help of a nurse to take a mandatory blood draw.  Doc. 12-8 at 42, 44, 46-47. Sherman conceded he was unaware of Petitioner's injuries or the treatment he might have needed. *Id.* at 42.  However, based on the overall uncertainty of Petitioner's medical condition and the early morning hour, he believed there was no time to procure a search warrant.  *Id.* at 48. Sherman further testified that even if he had been able to obtain a warrant, he feared that a medical intervention would likely delay the retrieval of a blood specimen.  *Id.*

Sherman testified that to obtain a warrant, he would have had to drive to the Dallas County jail, where he undoubtedly would have had to wait to use a computer to type the warrant application and then see the duty judge, who is known to be very busy with many matters besides warrant applications.  He further testified that, because Dallas County did not have expedited blood-warrant procedure, he expected it would take at least two-to-four hours to obtain a warrant, *id.* at 49-51, and that execution of a warrant would have been delayed further if Petitioner was taken to surgery while the warrant was being sought, *Id.* at 52.  Consequently, Sherman testified that he believed that, due to his lack of information regarding Petitioner's medical condition and the treatment required, that it was necessary to get a blood specimen without first obtaining a warrant.  *Id.* at 52-53.  Thus, Sherman provided a blood-draw kit to a

nurse, who extracted the blood according to procedure, after which Sherman personally delivered the vial containing the specimen to a Garland laboratory for testing. *Id.* at 53, 56.

On cross examination, Sherman provided more details about the typically long delays at the Dallas County jail and the likelihood that he would have had to wait in line to obtain a warrant regardless of the circumstances. Doc. 12-8 at 61-62. Sherman opined that there probably was no other DPS trooper in Dallas County who could have secured a warrant because in Dallas County all DPS officers are required to be stationed on the tollway. *Id.* at 63-64. And while he could have tried to seek assistance from the Dallas Police Department, he did not, nor did he call the Dallas County Jail to see if it was as busy as he assumed. *Id.* at 65, 67. On redirect, Sherman reiterated that he "had no idea" whether Petitioner would need surgery or a CT scan next, or whether he had a lacerated liver or other internal injuries. *Id.* at 69.

Manges, the trauma nurse on duty the night of the accident, testified that, when Petitioner was brought into the emergency room, his breath smelled of alcohol and he was combative and belligerent – pulling on his C collar, cursing, and spitting. Doc. 12-8 at 71-74. Ultimately Petitioner was sedated so medical personnel could assess his condition and conduct a CT scan. *Id.* at 74-75. According to Manges, Trooper Sherman personally observed Petitioner's noncompliance and then asked him to perform the blood draw (after Petitioner was sedated), which Manges completed at 2:17 a.m. *Id.* 74-81. On cross examination and redirect, Manges confirmed that, after the blood draw, Petitioner would be undergoing a CT scan, to determine if he had any internal bleeding. *Id.* at 82-85. He explained that prior to the scan no one knew that Petitioner only had a small liver laceration that, in the end, did not require surgery. *Id.* at 85.

Manges agreed that it would not have been medically reasonable to delay a CT scan for another two to three hours to obtain a warrant. *Id.*

At the conclusion of the evidence, the trial court denied the motions to suppress. *Id.* at 92-96.

**Counsel's Failure to Raise Denial of Suppression Motion on Direct Appeal**

The Court evaluates Petitioner's claim of ineffective assistance of appellate counsel under the two-prong *Strickland* test.  See *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Appellate counsel, however, "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)).  It is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal.  *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (counsel is obligated only to raise and brief those issues that are believed to have the best chance of success).  In addition, the petitioner must show prejudice, namely that there is "a reasonable probability that, but for his counsel's unreasonable failure ... he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285-86.

Here, even assuming appellate counsel was deficient in failing to challenge the denial of the motion to suppress on appeal, Petitioner has not shown the requisite prejudice.  *See Robbins*, 528 U.S. at 286 n. 14 (court need not address performance if it is simpler to dispose of ineffectiveness claim due to lack of prejudice).  As detailed *infra*, Petitioner's argument that the blood test was taken without exigent circumstances lacks merit.  Consequently, because appellate counsel's failure to raise the meritless suppression issue would not have changed the outcome of

Petitioner's appeal, Petitioner was not prejudiced.  *See Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006) (noting that prejudice requires "a reasonable probability that he would have won on appeal").

As the Supreme Court noted in *Missouri v. McNeely*, a warrantless search is unreasonable unless it falls within a recognized exception to the warrant requirement, such as when law enforcement officers seek "to prevent the imminent destruction of evidence." 569 U.S. 141, 148-149.  The Court explained that in such a situation, "a warrantless search is potentially reasonable because 'there is compelling need for official action and no time to secure a warrant.'" *Id*. (quoted case omitted). Thus, whether an emergency justifies acting without a warrant, requires a case-by-case evaluation of the exigency based on "the totality of circumstances." *Id.* at 149-50.

In the instant case, the evidence presented at the suppression hearing confirms that exigent circumstances justified the warrantless blood draw.  Petitioner (1) had been involved in an automobile accident that resulted in a fatality, (2) appeared intoxicated, and (3) had been airlifted to Parkland Hospital due to possible injuries.  When Officer Sherman, who was asked to assist, arrived at the hospital, Petitioner was in the emergency room awaiting a CT scan to assess his medical condition further and determine what treatment might be needed if any internal injuries were found.  Contrary to Petitioner's assertion, absent a CT scan, no one knew if he suffered any internal bleeding or a head injury that would necessitate imminent surgery.  Doc. 12-8 at 48, 82, 85.  The state trial court implicitly found credible Officer Sherman's testimony that if he had left the emergency room to prepare a warrant application and seek judicial approval – a process that in Dallas County was very lengthy and took on the average two to four hours –

any blood-alcohol evidence of intoxication may well have dissipated. This Court has no basis to disturb that finding.

On this evidence, the state court did not err in concluding that there existed exigent circumstances based on (1) the lengthy and unpredictable process of preparing a warrant application, presenting it to a judge and obtaining a warrant at night in Dallas County; and (2) the possible loss of evidence through natural dissipation of alcohol caused by the delay in seeking and obtaining a warrant and the possibility that Petitioner would not be available for the execution of the search warrant while awaiting the results of a CT scan and possible further treatment might be necessary after the CT scan. *See McNeely* at 569 U.S. at 153 ("some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test"). Moreover, Petitioner's reply argument that Sherman did not know whether he would be going to surgery is of no consequence, Doc. 25 at 4, since the main concern at the emergency room was the determination of Petitioner's injuries and medical condition.

Likewise, Petitioner's argument that Sherman relied on a "false and misleading statement" from Trooper White in requesting the warrantless blood draw – that Officer Williams had died at 1:26 a.m., when the autopsy report reflected the time of death at 3:13 a.m. – does not advance Petitioner's Fourth Amendment claim. Doc. 19 at 3; Doc. 25 at 8. He ventures:

> Had officer Otis White NOT (emphasis added) relayed "that a death occurred from this collision" trooper Sherman under no Statue nor circumstances would have been legally authorized to have Petitioner's blood drawn. Otis White notified Sherman at 1:26 a.m. (see 2RR 30, 8-20) well before the actual time of death 3:13 a.m. (see Exhibit A)

Doc. 19 at 3. Relying solely on the autopsy report, Petitioner thus surmises that Sherman could not have known of Williams's death when he directed Manges to conduct the blood draw around 2:00 a.m. Doc. 25 at 8. However, the exact time of Williams's death is irrelevant in deciding the Fourth Amendment suppression issue, namely whether exigencies were present at the time Sherman ordered the blood draw.

Lastly, Petitioner points to Sherman's failure to call the Dallas County jail to see if the intake-warrant area was busy, to obtain a blood warrant from the duty judge, or to seek the assistance of a Dallas trooper. Doc. 25 at 4. Based on Sherman's testimony regarding the inherent delays at the Dallas County jail and the procedures followed in Dallas County, however, it was reasonable to infer that calling either the jail or the duty judge, or trying to obtain the assistance of a local officer, would not have appreciably speeded up the process of securing a search warrant.

Accordingly, applying the appropriate deference and having independently reviewed Petitioner's claim and the state court record, the Court concludes the trial court did not err in implicitly finding that exigent circumstances existed to satisfy Petitioner's warrantless blood draw under the Fourth Amendment. Thus, Petitioner has not shown that the state court's rejection of his claim of ineffective assistance of appellate counsel was unreasonable, and his first claim fails.

### B. Ineffective Assistance of Counsel at Trial

Next, Petitioner raises three instances of ineffective assistance of counsel at trial. But he again fails to show that the state court's application of *Strickland* was unreasonable.

### 1. Failure to Request Jury Instruction on Suppression Issue – Claim 2

Petitioner asserts counsel rendered ineffective assistance when he "failed to request that the jury be instructed to disregard" the blood alcohol results "if it felt that the evidence had been obtained in violation of Petitioner's state and/or federal constitutional rights." Doc. 3 at 6. However, Petitioner identifies no factual issue that would have justified an instruction under TEX. CODE CRIM. PROC. ART. 38.23(a). *See Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) ("To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct."). Here, the petition is silent about any factual dispute relevant to exigent circumstances raised before the jury (as distinguished from the trial court's legal determination that the facts heard at the suppression hearing established exigent circumstances). In his reply, Petitioner avers only that a factual issue existed as to "circumstances surrounding the basis of his arrest," and the subsequent "seizure of Petitioner's blood without a warrant." Doc. 25 at 9-10. That is insufficient to identify a specific material, disputed fact before the jury, however. *See Madden v. State*, 242 S.W.3d 504, 513, 517 (Tex. Crim. App. 2007) ("To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question" and "the disputed fact must be one that affects the determination of the legal issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value.").

Because Petitioner offers no non-frivolous basis for requesting an instruction under Article 38.23, he cannot overcome the strong presumption that he received effective assistance of counsel during jury selection.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").  Thus, the state court's denial of relief on this ground was a reasonable application of federal law, and his second claim fails.

### 2.   Failure to Challenge Blood-Alcohol Test Evidence – Claim 3

Petitioner also claims counsel was ineffective in failing to move to suppress the blood evidence "obtained for medical use" by Nurse Manges.  Doc. 3 at 7; Doc. 25 at 11.  At trial, Manges testified that the blood alcohol test conducted for medical purposes was necessary to assess Petitioner's medical condition and possibly rule out a dangerous head injury.  Doc. 12-11 at 18-21.  He also noted that the medical-use test measured only the ethanol plasma level and, as such, the results were different from the blood alcohol level of the entire blood later tested at Trooper Sherman's request.  Doc. 12-11 at 21.

The collection of evidence by private actors who are not acting at the direction of law enforcement – as was the case in the instance about which Petitioner complains – does not implicate the Fourth Amendment's exclusionary rule.  Petitioner does not offer a non-frivolous basis for counsel to object to the blood-test result arising from the medically-necessary blood draw, including any question regarding its reliability, averring only that emergency medical personnel forcibly restrained and drugged him following the accident.  Doc. 25 at 11-12.  *See Green*, 160 F.3d at 1037.  Because Petitioner has not demonstrated that the state court's implicit

rejection of his ineffective-assistance-of-counsel claim was an unreasonable application of clearly established federal law, his third claim fails.

### 3. Failure to Object on Confrontation grounds – Claim 5

Next, Petitioner asserts counsel rendered ineffective assistance in failing to object on confrontation grounds to the State's introducing hearsay testimony to prove that when Williams's car was struck, Williams was discharging an official duty. Doc. 3 at 8.

At trial, Sgt. Ricky Wilson, a patrol sergeant supervisor with the Waxahachie Police Department, testified that on the night in question he was on duty and was supervising Officer Williams who, at the time of the crash, was in route to back up another officer. Doc. 12-10 at 19-21, 24-25 (RR IV). Because Wilson testified as to matters that he had first-hand knowledge – that he was on duty and that he was supervising Williams who was also on duty – Petitioner cannot establish that Wilson's testimony amounted to hearsay. Thus, Petitioner again fails to offer a non-frivolous basis for counsel to object a trial. *Green*, 160 F.3d at 1037. And considering the myriad of ways the State could have established that Williams was on duty as a law enforcement officer at the time of the accident, failure to object on the basis of hearsay to the seeming benign testimony of Williams' supervisor could be considered good trial strategy. Accordingly, because Petitioner has not demonstrated that the decision implicitly rejecting his ineffectiveness claim was in any way unreasonable, he cannot prevail.

### C.    False Testimony – Claim 4

Lastly, Petitioner asserts that the prosecutor introduced false testimony from Troopers White and Sherman about Officer Williams's time of death. Doc. 3 at 7. Relying on the autopsy report, Petitioner claims that White and Sherman testified falsely at the suppression hearing and

then at trial "that prior to ordering … Manges to draw Petitioner's blood they had been notified of [Officer Williams's] death." Doc. 3 at 7; Doc. 25 at 13.

As discussed *supra*, the exact time of Williams's death is irrelevant in deciding the Fourth Amendment suppression issue. Thus, even if the Troopers' testimony about the exact time of death was false, Petitioner has not shown that the testimony was material. *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972) (to prove a Due Process Clause violation based on the state's reliance on false testimony, the defendant must establish: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false"); *see also Napue v. Illinois*, 360 U.S. 264, 269, 271 (1959). Petitioner has failed to show how he was prejudiced by such testimony at the suppression hearing or at trial. Further, not prolonging the discussion of the details of Williams's demise could have been considered good trial strategy. Petitioner has again failed to show that the state habeas court's implicit denial of this claim reflected an unreasonable application of clearly established Supreme Court precedent. Therefore, this claim lacks merit.

### D. Evidentiary Hearing and Discovery not Required

Petitioner requests an evidentiary hearing to "fully develop facts not accomplished in state court" and expand the record on the issues presented in the federal petition. Doc. 25 at 16; *see also* Doc. 19 at 1, 9, 19. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition

concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Accordingly, he is not entitled to an evidentiary hearing.

Petitioner has also submitted a motion for discovery to provide further support for his habeas claims. Doc. 19 at 2-19. But he has not demonstrated good cause to permit discovery. *See* Rule 6 of the Rules Governing Section 2254 Proceedings for the United States District Courts (granting district courts discretion to authorize discovery only upon a showing of good cause); *see also Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (addressing good cause standard). "[T]o establish good cause, the petitioner must demonstrate that 'a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.'" *Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (quoted case omitted). Thus, he is not entitled to conduct discovery.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus and Petitioner's motion for discovery [Doc. 19] be **DENIED**.

**SIGNED** June 26, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F‌ED. R. C‌IV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE